UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEJAH SOONG, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-07-cv-155 (JCH) |
| | : | |
| MATTHEW ANTONETTI and | : | |
| THE CONNECTICUT DEPARTMENT | : | |
| OF PUBLIC HEALTH | : | |
|     Defendants. | : | MARCH 21, 2007 |
| | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 9) AND PLAINTIFF'S MOTION TO DENY THE MOTION TO DISMISS (Doc. No. 18), MOTION FOR CLARIFICATION (Doc. No. 18), MOTION TO AMEND (Doc. No. 18), AND EX PARTE MOTION FOR EMERGENCY INJUNCTIVE RELIEF (Doc. No. 19)**

The plaintiff, Mejah Soong has brought this Complaint (Doc. No. 1) against the defendants, Matthew Antonetti and the Connecticut Department of Public Health ("DPH"), arising out of the DPH's order that Soong submit to a psychiatric evaluation. The defendants have filed this Motion to Dismiss (Doc. No. 9) Soong's Complaint. In her Response (Doc. No. 18), Soong has also moved to clarify that her Complaint is based on her rights to freedom of speech and religion and to amend her Complaint to include the violation of her Equal Protection rights. Lastly, Soong has filed an emergency ex parte motion for injunctive relief.[1]

The court grants Soong's Motion to Amend (Doc. No. 18) and Motion for Clarification (Doc. No. 18). For the reasons that follow, the court grants the defendants' Motion to Dismiss (Doc. No. 9) and denies Soong's ex parte motion for injunctive relief (Doc. No. 19).

---

[1]As Soong's ex parte motion for injunctive relief includes allegations collateral to her original Complaint, the court will address these claims with the defendants' motion to dismiss.

**I. BACKGROUND**[2]

On January 3, 2006, Mejah Soong and Syloke Soong wrote a letter to a group of psychoanalysts. At the time, Soong was a practicing psychiatry in Massachusetts. The letter made reference to an allegory based on a traditional Jewish world view that, according to Soong, most Christians are immediately prejudiced against. Someone from this group allegedly turned the letter over to the Massachusetts Board of Registration in Medicine ("BRM"). On February 17, 2006, Soong claims that the BRM coerced her into signing a non-disciplinary agreement not to practice medicine in Massachusetts. The BRM ratified this agreement on March 1, 2006.

On November 8, 2006, Soong asserts that Matthew Antonetti, an attorney for the DPH, retrieved a copy of her letter from Massachusetts. On either November 20 or 21, 2006, Antonetti supplied Soong's letter to J. Robert Galvin, the Commissioner of DPH. Antonetti also allegedly supplied Galvin with an affidavit by Diane Cybulski, a DPH employee, in which Cybulski discussed Soong's use of the Jewish allegory and the DPH's general investigation of Soong. Cybulski also attached to her affidavit: 1) a letter from the BRM indicating that its investigation of Soong was confidential; 2) a copy of Soong's agreement with the BRM; 3) an email from Soong dated January 3, 2006; 4) an April 24, 2006 evaluation of Soong by Dr. Christian Flynn; and 5) a separate letter from Soong dated November 11, 2006.

Based on these submissions, and pursuant to Connecticut General Statutes

---

[2]The court takes the facts alleged in plaintiffs' complaint as true, as it must, and draws all inferences in plaintiffs' favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

Sections 19a-14(a)(10), 20-13c, and 20-13e(c), Galvin determined that a psychiatric evaluation of Soong was necessary in order to evaluate her mental and emotional capacity to practice as a physician. Galvin's order required Soong to submit to a psychiatric evaluation by January 17, 2007.

On December 6, 2006, Antonetti allegedly told Soong that, if Soong did not comply with the DPH's order that he could suspend her license or the Supreme Court could order the evaluation. Soong alleges that, throughout the month of January, Antonetti made repeated demands of Soong that were outside the boundaries of the DPH's order and continued threatening to suspend Soong's license if she did not comply with his demands. Soong has not submitted to the ordered evaluation.

## II.  DISCUSSION

In her Complaint and Response, Soong essentially asserts that the DPH's investigation into her behavior and subsequent order that she submit to a psychiatric evaluation are motivated by the DPH's intolerance of Soong's religious references. In her Response, Soong extensively details aspects of the DPH's investigation that demonstrate the discriminatory attitude of DPH employee's such as Cybulski and Antonetti. Soong asks this court to enjoin the defendants, in various ways, such as ordering Antonetti to cease making demands upon Soong not contained in the DPH order; preventing Antonetti from taking any action against Mejah Soong before the DPH evaluation is complete; preventing the DPH from using a criminal complaint that Soong filed with the United States Attorney General of Massachusetts against her; and preventing the DPH from using Cybulski's affidavit against Soong.

The DPH order to Soong to submit to psychiatric testing was clearly a

3

government action taken in the public interest.  See Conn. Gen. Stat. § 19a-14(a)(10).  Therefore, to demonstrate that she is entitled to injunctive relief, Soong must, at a minimum, establish that she will likely suffer irreparable harm without an injunction from this court.  Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999).

Soong's difficulty with showing irreparable harm is that she has refused to obey the DPH's order.  Under Connecticut law, "if the physician fails to obey a [DPH] order to submit to examination or attend a hearing, the [DPH] may petition the superior court for the judicial district of Hartford to order such examination or attendance."  Conn.Gen.Stat. § 20-13e(d).  Once the DPH makes such a petition, the superior court has jurisdiction to issue the order.  Id.  Thus, a layer of state court review stands between Soong and the irreparable harm she alleges.  The fact that the DPH must first petition the Superior Court before continuing to force Soong undergo an evaluation prevents Soong from showing that she faces an "actual and imminent" injury.  Rodriguez, 175 F.3d at 234.  Though Soong also claims that the DPH's investigation is already causing harm to her reputation and ability to secure employment, such indirect injuries do not constitute irreparable harm.  See Sampson v. Murray, 415 U.S. 61, 89-92 (1972).

The court finds that Soong has failed to make a showing of irreparable harm.  The defendants' Motion to Dismiss is therefore granted, and Soong's motion for injunctive relief is denied.

### III.  CONCLUSION

For the foregoing reasons, Soong's Motion For Clarification (Doc. No. 18) and Motion to Amend (Doc. No. 18) are GRANTED.  The Motion to Deny the Defendants'

4

Motion to Dismiss (Doc. No. 18) is DENIED. Soong's Ex Parte Motion for Injunctive Relief (Doc. No. 19) is DENIED. The defendants' Motion to Dismiss (Doc. No. 9) is GRANTED.

Because the court grants the defendants' Motion to Dismiss, Soong is only entitled to amend her Complaint to state claims over which this court would have jurisdiction that are not related to the current DPH investigation of Soong's mental fitness. Specifically, as to her Equal Protection claim, Soong must limit her amendment to state why her right to equal protection under the law compels the DPH to permanently destroy or remove from its files Cybulski's affidavit and Soong's criminal complaint.[3]

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 21st day of March, 2007.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[3] The court also finds that Soong's emergency, ex parte motion for emergency injunctive relief (Doc. No. 19) was improperly filed because Soong did not seek leave of the court before filing the motion. Had Soong sought leave of this court to file this motion, the court would have denied it, as the nature of this motion does not warrant emergency relief. Soong should note that she must always seek leave of the court in order to file emergency, ex parte motions.